**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **S & P INVESTMENT GROUP, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-00159-O** |
| | § | |
| **KINGDOM MATERIALS HOLDINGS,** | § | |
| **LLC, KINGDOM RESOURCES, LLC,** | § | |
| **& MICHAEL BLUBAUGH,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion for Default Judgment that S & P Investment Group, LLC ("Plaintiff") filed against Kingdom Resources, LLC and Michael Blubaugh (collectively, "Defendants"), and Plaintiff's supplemental briefs in support. ECF Nos. 66, 69, 71, respectively. The Court conducted a hearing on the Motion on July 5, 2022. *See* ECF Nos. 70, 72. Having considered the Motion, briefing, Plaintiff's arguments at the hearing, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT in part** and **DENY in part** the Motion (ECF No. 66) and **ENTER default judgment** on Plaintiff's breach of contract claim as explained below.

**I.      BACKGROUND**

Plaintiff is an investment advisory firm that assists with business development and connects entities with investors equipped to handle their unique capital needs. ECF No. 66. Kingdom Materials Holdings, LLC ("KMH") and Kingdom Resources, LLC ("KR") are separate entities in a family of enterprises that all bear the "Kingdom" moniker and operate in an array of different industries. *Id.* Michael Blubaugh is a manger of both KMH and KR. *Id.* On August 21,

2017, Plaintiff entered a Note Purchase Agreement (the "Agreement") with KR and KMH. ECF No. 66-2. The Agreement consisted of two parts: (1) a $250,000 loan to assist with KR's and KMH's extensive liquidity needs; and (2) a $100,000 contract for Plaintiff to provide consulting services to Defendants on business development matters and connect them with potential investors who could accommodate their substantial capitalization requirements. *Id.*

In exchange for the loan and consultancy services, KR and KMH executed a promissory note (the "Note") to Plaintiff. ECF No. 66-3. The Note was set to mature on September 21, 2017, at which time KR and KMH were to pay Plaintiff the principal owed plus 15% interest on the loan and Texas's statutory rate for non-default interest on the consultancy fee. ECF Nos. 66 at 3; 66-2 at 7; 66-3 at 2. If KR and KMH defaulted, interest increased to 18%. ECF No. 66 at 2. The parties secured the Note with a Security Agreement. ECF No. 66-4. The Security Agreement made a series of representations and warranties, *see id.* at 4-5, and gave Plaintiff a first-priority lien on certain of KR's and KMH's machinery (the "Collateral"). *Id.* at 12. As KR's and KMH's Manager, Michael Blubaugh signed the Agreement, Note, and Security Agreement. *See* ECF Nos. 66-2 at 25 (Blubaugh's signature on the Agreement); 66-3 at 3 (Blubaugh's signature on the Note); 66-4 at 11 (Blubaugh's signature on the Security Agreement).

In the Agreement, Defendants represented the following:

> **Section 6.4**      **Litigation.** Except for matters disclosed in Schedule 6.4 to this Agreement, there is no action, suit or proceeding pending against, or to the knowledge of the Borrower, threatened against or affecting the Borrower before any Governmental Authority in which there is a reasonable possibility of an adverse decision that could reasonably be expected to have a Material Adverse Effect or that could in any manner draw into question the validity of the Note Documents.

ECF No. 66-2 at 12. But Plaintiff says this representation was untrue and that "Defendants negligently and/or recklessly misrepresented and/or concealed pending litigations that could reasonably have a Material Adverse Effect, specifically on Defendants['] assets and financial

condition and [their] ability to completely and timely perform [their] obligations under the Note

Purchase Agreement." ECF No. 4 at 3.

Plaintiff further alleges Defendants lied in the Security Agreement, which provided in

relevant part:

> (c)     Upon the execution and delivery of this Agreement and the filing of all
> related UCC-1 financing statements (and subject only to the further assurance
> obligations described in the Note Purchase Agreement), the Secured Party's
> security interest in such Collateral of the Debtor conferred hereby will be a valid,
> perfected and a first priority security interest. No effective financing statement or
> other instrument similar in effect covering all or any part of the Collateral is on file
> in any recording office except such as may have been filed (i) in favor of Secured
> Party relating to this Agreement, or (ii) to perfect or protect any security interest
> expressly permitted by the Note Purchase Agreement.

ECF No. 66-4 at 4. As Plaintiff soon discovered, a senior credit interest encumbered the collateral,

per a UCC-1 Financing Statement filed several weeks before the Agreement. *See* ECF No. 66-13

at 2-5.

Defendants defaulted. *See* ECF Nos. 4 at 5; 66 at 4. When two years passed and Defendants

continuously failed to make timely payments, Plaintiff retained counsel. *See* ECF Nos. 66-1 at 5;

66-5 at 2. Plaintiff's counsel tried to contact Defendants to discuss repayment and locate the

Collateral. *See generally* ECF Nos. 66-5 to 66-9. When those attempts proved futile, Plaintiff sued

Defendants in the Southern District of New York, where Plaintiff is domiciled, alleging breach of

contract, fraud, unjust enrichment, conversion, breach of implied covenant of good faith and fair

dealing, and negligent misrepresentation. ECF No. 4. In February 2021, United States District

Judge Ronnie Abrams transferred the case to the Northern District of Texas under 28 U.S.C. §

1404. ECF No. 34.

In January 2022, Plaintiff settled with and dismissed its claims against KMH. ECF No. 54.

When Defendants filed no responsive pleadings, Plaintiff asked the Clerk to enter default, *see* ECF

No. 63, which the Clerk did. ECF No. 64. Plaintiff now moves for default judgment against KR and Blubaugh, jointly and severally, for fraud and negligent misrepresentation. ECF No. 66 at 9. Because Blubaugh signed the relevant contractual documents in his capacity as KR's and KMH's manager, Plaintiff seeks default judgment on the breach of contract claim only against KR. *Id.*

Judge O'Connor referred Plaintiff's Motion to the undersigned under 28 U.S.C. § 636(b)(1). ECF No. 67. The Court ordered supplemental briefing on the matter and required further evidence of Plaintiff's performance under the Agreement. ECF No. 68. Plaintiff complied, filing supplemental briefs with the additional evidence. ECF Nos. 69, 71. The Court conducted a hearing under Federal Rule of Civil Procedure 55(b)(2) on July 5, 2022. *See* ECF Nos. 70, 72. Plaintiff's counsel appeared telephonically and elaborated on evidence supporting Plaintiff's Motion. *See* ECF Nos. 71-72. Defendants did not appear and have filed no other pleadings in this matter.

## II. LEGAL STANDARDS

### A. Default Judgment.

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. There are three stages to entry of default judgment. First, a default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55(a) (noting default occurs where the defendant "has failed to plead or otherwise defend" against the complaint). Second, the Clerk may enter a defendant's default if it is "established by affidavit or otherwise." *Brown*, 84 F.3d at 141 (citing Fed. R. Civ. P. 55(a)). Third, if the Clerk enters default, the plaintiff must apply for a default judgment from the Court. Fed. R. Civ. P. 55(b)(2). However,

the Court may not enter default judgment against an individual in military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 521.

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Rather, courts retain ultimate discretion to grant or deny default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Courts use a three-pronged analysis to determine if default judgment is appropriate. *J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). First, courts ask if default judgment is procedurally warranted. *See Lindsey*, 161 F.3d at 893. The *Lindsey* factors inform this inquiry. Under *Lindsey*, the Court may consider whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) default judgment would be too harsh; and (6) the court would be obliged to set aside the default upon motion from the defendant. *Id.*

Second, if default is procedurally warranted under *Lindsey*, courts analyze the substantive merits of the plaintiff's claims and ask if the pleadings establish a sufficient basis for default judgment. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu*, 515 F.2d at 1206. But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Morelia*, 126 F. Supp. 3d at 813. In making this determination, the Complaint's "well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr.*, *Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *see generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 & n.29 (5th Cir. 2002) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting 10A Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure § 2688 at 58-59 & n.5 (3d ed. 1998)). At this juncture, courts often find it helpful to conduct a Rule 55(b)(2) hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *see* Fed. R. Civ. P. 55(b)(2) (noting courts may conduct a hearing on motions for default judgment if needed to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter").

While the Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments," this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process . . . within the domain of the trial judge's discretion." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). But default judgment remains "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989); *see also Shipco*, 814 F.2d at 1014 (calling default judgments "draconian").

## B.    Attorneys' Fees.

The Court has "broad discretion in setting the appropriate award of attorneys' fees." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The first step in setting an appropriate award

6

looks to the "lodestar" of the relevant fees. *Id.* "The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). The lodestar sets the baseline for reasonable fees, but the Court "may adjust it upward or downward in exceptional cases." *Id.*; *see also Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir. 1987) ("[T]he calculation of the lodestar does not end the inquiry and [] other considerations may persuade the district court to increase or decrease a fee award.").

After calculating the lodestar, the Court must evaluate the amount in light of the twelve factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors include: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or circumstances"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorneys"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases." *Johnson*, 488 F.2d at 717-19; *see also* Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, §9) (incorporating the *Johnson* factors into the State Bar of Texas's rules of professional conduct). "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

"[I]t will not always be necessary for a district court to address each of the twelve factors in explaining the considerations affecting its decision." *Davis v. Fletcher*, 598, F.2d 469, 471 (5th Cir. 1979). Nevertheless, "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (citation omitted). "[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting *Kellstrom*, 50 F.3d at 324). While the absence of contemporaneous billing records "does not preclude an award of fees per se," the evidence must be "adequate to determine reasonable hours." *Id.* (quoting same at 325).

## III.    ANALYSIS

The Clerk entered Defendants' default, ECF No. 64, meaning the Court must now ask if default judgment is appropriate. *Lewis*, 236 F.3d at 767. To do so, the undersigned applies the three-pronged inquiry. *See Morelia*, 126 F. Supp. 3d at 813. Plaintiff makes three alternative requests for default judgment based on the Complaint's fraud, negligent misrepresentation, and breach of contract claims, respectively. ECF No. 66 at 9. Having conducted the three-part analysis for each, the undersigned concludes Judge O'Connor should deny the first two and grant the third.

Each of Plaintiff's claims survives the first of the three-pronged inquiry. Under *Lindsey*, default judgment may be procedurally warranted based on six considerations. *See* 161 F.3d at 893. Five of the six support default judgment for Plaintiff's fraud and negligent misrepresentation claims. All six support default judgment on Plaintiff's breach of contract claim.

For the first factor, material issues of fact remain for Plaintiff's fraud and negligent misrepresentation claims. For the fraud claim, the pleadings do not state with particularity facts

indicating Defendants made the alleged misrepresentations with fraudulent intent. *See infra*, pp. 10-11. Likewise, the pleadings do not establish Defendants made the misstatements with reckless or negligent disregard for their veracity, as required for negligent misrepresentation claims. *See infra*, pp. 11-13. However, for the breach of contract claim, the pleadings eliminate all remaining issues of material fact. *See infra*, pp. 14-15. Similarly, nothing here shows the second factor's "substantial prejudice" requirement undermines Plaintiff's entitlement to default judgment. *See Lindsey*, 161 F.3d at 893. The third and fourth elements also support default judgment because the grounds of Defendants' default are clearly established, *see* ECF No. 66, and nothing indicates the default is due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. To date Defendants have failed to file any pleadings with the Court, despite being afforded abundant opportunities to do so. Accordingly, the fifth factor supports default judgment, as a judgment by default is not too harsh when the defaulting parties have had every opportunity to plead their cause, but did not do so. *Id.* Finally, given the clear satisfaction of the above elements, nothing indicates the Court would "be obliged to set aside the default upon motion from the defendant." *See id.*; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense").

    With five of six *Lindsey* factors supporting default judgment on Plaintiff's fraud and negligent misrepresentation claims and six of six supporting Plaintiff's breach of contract claim, all claims survive the step-one analysis. *See Morelia*, 126 F. Supp. 3d at 813. But the analysis differs at step two, where the Court must examine the substantive merits of Plaintiff's claims and determine whether the pleadings establish a sufficient basis for default judgment on each. *See*

*Nishimatsu*, 515 F.2d at 1206. For Plaintiff's fraud and negligent misrepresentation claims, they do not. For Plaintiff's breach of contract claim, they do.

### A.    Default judgment is inappropriate for Plaintiff's fraud claim.

Plaintiff's pleadings typically establish entitlement to default judgment if they satisfy Federal Rule of Civil Procedure 8. *Wooten*, 788 F.3d at 498. To do so, the pleadings need only contain "a short and plain statement of the claim" showing Plaintiff's entitlement to relief. Fed. R. Civ. P. 8(a). For common law fraud, Plaintiff must show "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party; and (6) causing injury." *Flaherty & Crumrine Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212-213 (5th Cir. 2009) (citations omitted) (discussing Texas law); *see also* ECF No. 66-2 at 22 (noting Texas law governs the Agreement). But "[i]n federal court, fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b)." *Edge Adhesives, Inc. v. Sharpe Concepts, LLC*, No. 4:15-cv-405-O, 2015 WL 12743618, at *3-4 (N.D. Tex. Aug. 31, 2015) (citations omitted); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Plaintiff's pleadings fall short of Rule 9(b)'s particularity requirement. Plaintiff pleads the first two fraud elements by alleging Defendants made materially false statements concerning potential litigation and lien priority. *See* ECF No. 66 at 3, 6-8. But Plaintiff fails to satisfy elements three and four because the Complaint does not state *with particularity* that Defendants knew the statements were false and intended Plaintiff to act on them. This leaves the Court with an insufficient basis to verify Plaintiff's fraud claim and enter default judgment accordingly. *See Flaherty & Crumrine*, 565 F.3d at 212-213.

The undersigned recognizes elements three and four can be reasonably inferred from the pleadings because Defendants would have known about pending litigation and superior credit interests executed only weeks before the Agreement. And it does not strain credulity to argue Defendants made such misrepresentations, given in the context of contract negotiations, to induce Plaintiff's reliance. Nevertheless, such inferences at best support a generalized showing of fraud, not the particularized showing Rule 9(b) requires. *See* Fed. R. Civ. P. 9(b); *Edge Adhesives*, 2015 WL at *3-4. But generalized showings are not enough, as "Rule 9(b) requires, at minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (citations omitted). Even without the particularity requirement, default judgments are "not favored by the Federal Rules." *Sun Bank of Ocala*, 874 F.2d at 276. With Rule 9(b)'s heightened requirements added to an already disfavored outcome, Plaintiff's fraud claim does not overcome these obstacles. Judge O'Connor should **DENY** the Motion (ECF No. 66) for that claim.

### B.    Default judgment is inappropriate for Plaintiff's negligent misrepresentation claim.

No particularity requirement exists for negligent misrepresentation claims. To establish Defendant's untruths amounted to an actionable negligent misrepresentation, Plaintiff must show:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."

*Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996). Plaintiff's pleadings satisfy each element, both for Defendants' statements regarding pending litigation and Defendants' representation that no senior creditors had interests in the Collateral. *See* ECF Nos.

11

66 at 2-3, 6-8; 4 at ¶¶ 10, 11, 21, 38. The pleadings allege Defendants had a pecuniary interest in the transaction, which was taken in the course of their business. *Id.* The pleadings also allege the relevant statements were false. *Id.* But other than conclusory references to Defendants' "recklessness" and "negligence," *see, e.g.*, ECF No 66 at 6-8, Plaintiff does not specify what measures Defendants did or did not take to verify their statements and how those measures fell short of the "reasonable care" required. *See Clardy*, 88 F.3d at 357.

Such information notwithstanding, the Complaint's "well-pleaded factual allegations are taken as true, except regarding damages." *Shipco*, 814 F.2d at 1014. In this regard, Plaintiff's Motion emphasizes:

> In the Complaint, Plaintiff alleged that KR and Blubaugh (a) recklessly misrepresented that there were no pending actions, suits or proceedings against, or to the knowledge of Defendants, threatened against, or affecting the Defendants that could reasonably have a Material Adverse Effect; (b) intentionally concealed pending litigations that could reasonably have a Material Adverse Effect; and (c) intentionally, fraudulently, knowingly and/or in violation of Penal Law hid, sold, destroyed, impaired, or otherwise disposed of the Collateral and did not account to Plaintiff for the proceeds of such disposition in violation of the Note and Note Purchase Agreement.

ECF No. 66 at 6. Taking those assertions as true, the pleadings satisfy element three under *Clardy*. *See* 88 F.3d at 357. Plaintiff's arguments at the Court's July 5 hearing, as well as evidence documented in Plaintiff's supplemental briefing (ECF Nos. 69, 71), establish element four by showing Plaintiff's full contractual performance—and the resulting pecuniary loss arising from Defendants' breach. ECF No. 69.

But Defendants are "not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. Plaintiff's recitation of words like "recklessly . . . intentionally, fraudulently, [and] knowingly," *see* ECF No. 66 at 6, do not amount to well-

pleaded facts and may amount to conclusions of law. Thus, Plaintiff's claim seems to fall at step two of the Court's inquiry. *See Morelia*, 126 F. Supp. 3d at 813.

Even if the Court assumed the truth of Plaintiff's pleadings, it should exercise its broad discretion to deny default judgment for Plaintiff's negligent misrepresentation claim. Default judgment "is a drastic remedy" the Court is loath to extend. *Sun Bank of Ocala*, 874 F.2d at 276. The Court has substantial latitude to deny default judgment, irrespective of the above analysis. *Lindsey*, 161 F.3d at 893. The Court should deny default judgment if any element of a cause of action is left murky or otherwise established with room for doubt left over. *See id.* Here, if Plaintiff survives the *Lindsey* analysis and establishes the third element under *Clardy*, it is only because the Court assumed the truth of the pleadings. *See Shipco*, 814 F.2d at 1014. But for that assumption, the pleadings do not prove Defendants failed to exercise reasonable diligence when making the contested representations. Myriad factors could conceivably cause facts to "slip through the cracks" when negotiating a contract, and it is not outside the realm of plausibility to think Defendants did not know the statements were false despite reasonable prudence. To be fair, that seems unlikely. If the case proceeded to trial, a reasonable jury certainly could find Defendants acted without reasonable prudence when making such flagrant misstatements of material fact. Nevertheless, because default judgments are so disfavored—and because clearer grounds exist for default judgment here—Judge O'Connor should **DENY** the Motion (ECF No. 66) for Plaintiff's negligent misrepresentation claim.

C.    **Default judgment is appropriate for Plaintiff's breach of contract claim.**

Taken together, the Complaint and supplemental briefs establish Plaintiff's entitlement to default judgment on the breach of contract claim. *See* ECF Nos. 4, 69, 71. "The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered

performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Plaintiff satisfied the first element by producing as evidence the Agreement, Note, and Security Agreement, all signed by Plaintiff and Defendants. *See* ECF Nos. 66-2 at 25; 66-3 at 3; 66-4 at 11. Plaintiff's supplemental briefs and arguments at the hearing satisfied the second element by furnishing evidence of the $250,000 loan transfer and Plaintiff's performance under the $100,000 consultancy contract. *See* ECF No. 69, 71. Plaintiff's Complaint establishes the third element by presenting well-pleaded factual allegations of Defendants' default under the Agreement. ECF No. 4 at 5-6. Given Defendants' silence on the matter, the Court must accept those assertions as true. *Shipco*, 814 F.2d at 1014.

The undersigned initially hesitated to recommend default judgment on both the $250,000 loan and the $100,000 consultancy agreement. Plaintiff showed the existence of a valid promissory note incorporating "consultancy fees in the amount of One Hundred Thousand Dollars ($100,000)." ECF No. 66-3 at 2. Plaintiff also sufficiently pleaded Defendants' breach of the note and Plaintiff's corresponding damages. *See* ECF No. 69-1 at 4. The only wrinkle concerned Plaintiff's performance. It is relatively easy to show a standard loan was breached by simply offering evidence of the wire transfer or other transaction and showing Defendants never held up their end of the deal. But the Court should not flippantly assign $100,000 in liability on a services contract without proof of services rendered. In this regard, Plaintiff's arguments at the hearing and supplemental briefs sufficed. *See* ECF Nos. 69, 71.

At the Court's request, Plaintiff filed supplemental briefs detailing performance of the $250,000 loan and $100,000 consultancy services contract. Regarding the latter, the first

supplemental brief included a declaration from Plaintiff's representative, Mr. Vince Palmieri, who stated:

> The other $100,000 of indebtedness under the Promissory Note was for consulting fees. In connection therewith, Plaintiff provided valuable consulting services to Kingdom Resources LLC and Kingdom Materials Holdings, LLC. I, acting on behalf of Plaintiff, provided consulting services to Kingdom Resources LLC and Kingdom Materials Holdings, LLC concerning general business strategies, corporate development, loan recapitalization, and identification and/or introduction of potential lenders and investment banks. In connection therewith, I also traveled from New York to Dallas to personally meet with and consult Scott Haire of Kingdom Resources LLC and/or Kingdom Materials Holdings, LLC, and did in fact meet with and provide consultation to Scott Haire of Kingdom Resources LLC and/or Kingdom Materials Holdings, LLC.

ECF No. 69-1 at 4. At the hearing, Plaintiff's counsel explained the Dallas trip was not planned ahead of time and was taken for the sole purpose of rendering consultancy services. With Plaintiff's expertise and assistance, Defendants were well positioned to acquire additional funding and meet their investment needs. However, despite such value conferred, they defaulted under the terms of the Agreement. Accordingly, Plaintiff demonstrated entitlement to default judgment on the full scope of the Agreement: the direct loan of $250,000, plus the additional contract for $100,000 in consultancy fees.

**D.    The Court should enter default judgment in Plaintiff's favor against Defendant Kingdom Resources, LLC for $538,197.33, plus $162.34 per day from April 23, 2022 through the date Judge O'Connor enters default judgment.**

Default judgment is appropriate against Defendant KR on Plaintiff's breach of contract claim. But the Court's inquiry does not end there. Having concluded default judgment is proper, the Court must now "determine what form of relief, if any, the plaintiff should receive." *Morelia*, 126 F. Supp. 3d at 813. This is the only step in the inquiry where the Court does not assume the pleadings' truth. *See Shipco*, 814 F.2d at 1014. Plaintiffs cannot summarily provide the Court with figures for damages or attorney's fees without explanation. Rather, they must "establish[] the

15

necessary facts," either through detailed affidavits or an evidentiary hearing, to make the amount "capable of mathematical calculation." *United Artists*, 605 F.2d at 857. After considering Plaintiff's Motion, supplemental briefing, and evidentiary explications from the hearing, the undersigned concludes damages in this matter are mathematically ascertainable, amounting to $538,197.33, plus $162.34 per day in interest from April 23, 2022 through the date Judge O'Connor enters default judgment. This figure is the total of (1) Plaintiff's damages under the Agreement; and (2) Plaintiff's reasonable attorneys' fees, expenses, and costs of court. The undersigned addresses the payments in that order below.

### 1.    Plaintiff is entitled to $511,365.07 in damages.

As noted above, the Agreement's total value was $350,000, which consists of the $250,000 direct loan and the $100,000 consultancy contract. *See* 66-2 at 4, 7. Factoring in several partial payments from Defendants and a settlement payment from KMS, unpaid principal of $329,191.78 remains. *See* ECF No. 66-1 at 5. Interest initially accrued at 15% under the Agreement but increased to 18% upon Defendants' default. ECF Nos. 66 at 2; 66-2 at 7. As applied, the relevant unpaid interest reached $182,173.29 on April 22, 2022, the date Plaintiff filed the instant Motion for Default Judgment. *See* ECF No. 66. Adding those two figures, Plaintiff's total entitlement for unpaid principal and interest under the Agreement is $511,365.07. A convenient breakdown of this computation is provided in Exhibit 1-I to Plaintiff's Motion. *See* ECF No. 66-10 at 2. Plaintiff also prayed for "applicable interest" in its Complaint, *see* ECF No. 4 at 11, and is entitled to post-judgment interest at the federal rate under 28 U.S.C. §1961(a). *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). Post-judgment interest is compounded annually. *Craig v. GACP II, L.P.*, No. 3:19-cv-0058-G, 2022 WL 1778392 (N.D. Tex. June 1, 2022).

### 2.    Plaintiff is entitled to $26,832.26 in reasonable attorneys' fees, expenses, and court costs.

Plaintiff claims $26,250 in attorneys' fees and $582.26 in expenses were reasonably incurred in this case. *See* ECF No. 66-15 at 5-7. As an initial matter, the Agreement specified Plaintiff would be entitled to "costs, expenses, and attorneys' fees incurred" in the Agreement's enforcement. ECF No. 66-2 at 4-5. Plaintiff provided an itemized accounting of $876.26 in reasonably incurred expenses and costs, of which $582.26 related to Plaintiff's breach of contract claim. *See* ECF No. 66-15 at 6-7. Accordingly, Plaintiff's request for $582.26 in costs should be granted. However, the Court retains substantial discretion to determine the scope of appropriate fees. *Watkins*, 7 F.3d at 457.

As a starting point, Plaintiff conditionally requests appellate fees as follows:

$7,500 if Kingdom Resources, LLC files a post-judgment motion that is denied, plus additional attorney's fees of $20,000.00 if Kingdom Resources, LLC files an unsuccessful appeal to the Court of Appeals, plus additional attorney's fees of $5,000.00 if Kingdom Resources, LLC files for review with the United [States] Supreme Court that is denied, plus additional attorney's fees of $40,000.00 if Kingdom Resources, LLC files a petition for review with the United [States] Supreme Court that is granted, or if a brief on the merits is requested, and the judgment is upheld.

ECF No. 66 at 9. Judge O'Connor should deny ruling on Plaintiff's conditional request, without prejudice to Plaintiff's right to refile a Motion for Attorneys' Fees if any of the above scenarios occur.

"Conditional awards of appellate fees are also permitted under Texas law, as long as the award is supported by evidence of the fees' reasonableness." *Bank of N.Y. Mellon Trust Co., Nat'l Assoc. v. Meachum*, No. 3:20-cv-2250-L-BN, 2022 WL 743522, at *1 (N.D. Tex. Mar. 11, 2022) (citing *Passmore v. Baylor Health Care Sys.*, No. 3:13-cv-5016-P, 2016 WL 8578058, at *2 (N.D. Tex. Jan. 5, 2016)). But "a trial court's award of conditional appellate attorneys' fees must be

supported by evidence of their reasonableness." *Passmore*, 2016 WL 8578058, at \*2. In both *Passmore* and *Meachum*, the plaintiffs "set[] forth in detail the basis for the amounts of fees sought for responding to postjudgment motions; handling the appeal . . .; and handling any appeal to the Supreme Court." *See Meachum*, 2022 WL 743522, at \*1. As discussed below, Plaintiff set forth in detail the reasonableness of fees incurred up to this point in the proceeding. However, Plaintiff devotes a single paragraph to the conditional request for appellate fees, and only states "[i]t is my opinion" that the requested fees "would be a reasonable fee" if the referenced circumstances occurred. ECF No. 66-15. Such conclusory statements are not "evidence of reasonableness" and are certainly not "set forth in detail." *See Meachum*, 2022 WL 743522, at \*1. Accordingly, Judge O'Connor should deny Plaintiff's conditional request for post-judgment fees, without prejudice to Plaintiff's right to subsequently file for such fees should the need arise. The undersigned addresses Plaintiff's request for fees already incurred in this action below.

Step one in determining an appropriate fees award involves finding the lodestar, which "is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *LULAC*, 119 F.3d at 1232. Plaintiff provided a breakdown of services rendered by counsel (Ancona Levine Attorneys) and local counsel (the Crewse Law Firm). *See* ECF Nos. 66-11; 66-15. The breakdown and attached billing records reflect: a partner ("VJA") with Ancona Levine Attorneys worked 20.6 hours at $575/hour for an approximate total of $11,845; an associate ("AA") with Ancona Levine Attorneys worked 57.3 hours at $350/hour for an approximate total of $20,055.00; and James Crewse, Plaintiff's local counsel, worked 53.3 hours at $295/hour for an approximate total of $15,723.50. Plaintiff provided extensive briefing showing why those figures and hours are reasonable for a case like this. *See* ECF No. 66-15.

18

Rounding down that total figure ($35,778.50), the undersigned accepts Plaintiff's view that an approximate value of $35,000 is a reasonable lodestar for this matter.

The Court can adjust that lodestar up or down based on an analysis of the twelve *Johnson* factors. *See Johnson*, 488 F.2d at 717-19. After considering the sworn declaration of Plaintiff's local counsel and contemporaneous billing records of the above-referenced attorneys, the undersigned finds half of the *Johnson* factors are neutral (factors 2, 3, 4, 7, 10, and 11), while half of the *Johnson* factors indicate the amount requested is reasonable (factors 1, 5, 6, 8, 9, and 12). None of the factors indicate the fees and expenses requested are unreasonable. Moreover, the most important of the *Johnson* factors—"the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel," *see Migis*, 135 F.3d at 1047—all indicate Plaintiff's requested fees are reasonable.

To briefly touch on the neutral factors, factor two is unimplicated here because this case stems from a standard contract dispute, thus presenting no "novel" or "difficult" legal questions. *See id.* at 717. Likewise, the third factor is unimplicated because this case does not necessitate attorneys with highly specific or niche competencies. *See id.* And Plaintiff's local counsel does not suggest he or Plaintiff's initial counsel were significantly precluded from other work by taking this case, rendering the fourth factor inapplicable. *See id.* at 718. Further, Plaintiff has not indicated pressing time constraints apply to this action, which has been litigated in two different federal district courts for approximately two and a half years. *See, e.g.*, ECF No. 1 (indicating Plaintiff first filed this lawsuit on March 10, 2020 in the Southern District of New York). Thus, this case implicates no atypical "time limitations imposed by the client or circumstances." *Id.* Because the case presents nothing uniquely undesirable from a practitioner's perspective, the tenth *Johnson* factor also does not inform the Court's inquiry here. *See id.* And finally, "the nature and length of

19

the professional relationship with the client" does not factor into the Court's reasonability analysis because nothing implicates the nature and extent of Plaintiff's relationship with either the Crewse Law Firm or Ancona Levine Attorneys. *See* ECF No. 66-15 (suggesting no ongoing professional relationship with Plaintiff before this matter). Accordingly, that factor is irrelevant for the Court's reasonability analysis. *See Johnson*, 488 F.2d at 718-19.

As for factors suggesting that $26,250 would be a reasonable attorney fee for work in this matter, the first *Johnson* factor is "the time and labor required" for an attorney to prosecute the action. *Id.* at 717. Requesting $26,250, Plaintiff's counsel notes that "**75% percent** of the time incurred in connection with this case directly pertained to prosecuting Plaintiff's breach of contract claim, or was based on intertwined facts or so intertwined that it did not take longer to provide the service due to a claim other than Plaintiff's breach of contract claim." ECF No. 66-15 at 5. Having examined the relevant billing records and determined $35,000 is a reasonable lodestar, a request of 75% of that total ($26,250) should reasonably accompany default judgment on Plaintiff's breach of contract claim. This figure provides ample, but not unreasonable, compensation for 131.20 hours of reasonable and necessary legal representation. Consequently, the first *Johnson* factor indicates Plaintiff's requested fees are reasonable. *See* 488 F.2d at 717.

The fifth *Johnson* factor also lends support to Plaintiff's request. The fifth factor looks to the "customary fee" in similar cases. *See Johnson*, 488 F.2d at 717. In this regard, "courts in the Northern District [of Texas] have approved regular hourly rates of $345, $350, and $375." *Koehler v. Aetna Health Inc.*, 915 F. Supp. 2d 789, 799 (N.D. Tex. 2013) (collecting cases). While $575.00 is indeed a substantial sum of money for an hour's work, Plaintiff notes such a rate is not uncommon for an attorney with more than twenty years of business litigation experience in the Southern District of New York, and is by no means unheard of in the Northern District of Texas.

20

*See* ECF No. 66-15 at 5. This is naturally accompanied by the sixth factor—"whether the fee is fixed or contingent." *Id.* at 718. Ordinarily, larger fees may be justified if the fee is contingent. But here the fee is not relatively large, and the fact that both law firms represented Plaintiff on a fixed fee basis facilitates efficient calculations like the one conducted above. As such, the sixth factor supports an award of $26,250 in this case.

By far the most important factors in this case are *Johnson*'s eighth and ninth factors: the "amount involved and results obtained" and the "experience, reputation, and ability of the attorneys." *See* 488 F.2d at 718-19. The eighth factor makes $26,250 seem quite reasonable, as such a factor represents less than ten percent of the total value under the Agreement ($350,000). *See* ECF Nos. 66-2, 66-3. This is particularly true given the undersigned's recommendation that Judge O'Connor enter a default judgment in Plaintiff's favor on the breach of contract claim. Likewise, the ninth factor shows $26,250 to be a reasonable amount because Plaintiff's counsel brought almost 30 years of collective experience to the table and Plaintiff's local counsel has dedicated a large proportion of his eighteen years of practice to litigating similar business and finance related matters. *See* ECF No. 66-15 at 1-4. And finally, similar attorneys' fees awards are commonplace in the Northern District and elsewhere. *See, e.g.*, *Koehler*, 915 F. Supp. 2d at 797-800 (collecting cases). Accordingly, Judge O'Connor should grant $26,832.26 in reasonable attorneys' fees and court costs alongside Plaintiff's damages under the Agreement.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT in part** and **DENY in part** Plaintiff's Motion for Default Judgment. ECF No. 66. Judge O'Connor should **DENY** the Motion for Plaintiff's fraud and negligent misrepresentation claims, but **GRANT** the Motion for Plaintiff's breach of contract claim. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **ENTER DEFAULT JUDGMENT** in favor of Plaintiff

S & P Investment Group, LLC against Defendant Kingdom Resources, LLC in the amount of **$538,197.33**, plus an additional **$162.34 per day** in interest from April 23, 2022 through the date Judge O'Connor enters default judgment, and post-judgment interest calculated at the applicable federal rate from the date judgment is entered and compounded annually.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on July 7, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE